INTERSTATE TRUCKING COMPANY and others, Appellants, vs. DAMMANN, Secretary of State, Respondent.

*February 12—May 10, 1932.*

*Edward H. Meldman,* attorney, and *Edwin J. Gross* of counsel, both of Milwaukee, for the appellants.

For the respondent there was a brief by the *Attorney General, Fred ·M. Wylie,* deputy attorney general, and *Samuel Bryan,* assistant attorney general, and oral argument by *Mr. Bryan* and *Mr. Wylie.*

The following opinions were filed March 8, 1932:

FRITZ, J.   The allegations of plaintiffs' complaint, so far as material to consider defendant's demurrer thereto on the

ground of their insufficiency to state a cause of action, are to the following effect: All of the plaintiffs excepting the Central Motor Freight Association are foreign corporations, engaged in the business of freight transportation, hauling the freight by motor trucks, trailers, and semi-trailers between fixed points in Wisconsin and Illinois, and over regular routes between said states and other states. They own and operate trucks, with and without trailers and semi-trailers, some of which travel over regular routes from one state to another and/or between fixed termini in different states, including Wisconsin, while others haul freight between Chicago and Milwaukee, as contract carriers under contracts with manufacturers, over any route and in any manner as directed solely by the manufacturer; and in addition to such hauling as common carriers and contract carriers, they also haul their own merchandise or property from points in Illinois to points in Wisconsin and *vice versa,* for which no charges for transportation are made or paid. They pay a registration fee to and carry license plates of the state of Illinois, and pay taxes and other fees to the various states in which they operate their vehicles in their business. They are licensed to transact business in Wisconsin, and have paid the fees prescribed for that purpose, as well as for gasoline tax and for the certificate and permits required under ch. 194, Wisconsin Statutes. The Central Motor Freight Association is an incorporated organization having a membership in nine of the central states of the United States. A number of its members are located and are doing business in this state. Its purpose and object is to promote the welfare of the motor freight industry, its members and the public generally. The transportation business in which plaintiffs are engaged is necessary and beneficial to the public, and the provisions of ch. 444, Laws of 1931, discriminate against and unreasonably place a burden upon plaintiffs' business,

which will destroy a profitable industry and plaintiffs' investments therein, and will injuriously affect plaintiffs as well as the general public. Plaintiffs further allege that ch. 444, Laws of 1931, is void because it is in violation of provisions of the state and federal constitutions. By reason of such alleged violations, plaintiffs seek to enjoin the enforcement of that enactment.

For some years sec. 85.01 (1), Stats., has prohibited the operation of any motor vehicle, trailer, or semi-trailer on any highway unless it was registered in the office of the secretary of state of this state and the prescribed registration fee was paid; and sec. 85.05 (1), Stats., exempted from that requirement, as to registration, any such foreign-owned vehicle, registered in any other state or province, which carried number plates indicating such registration, providing such other state or province allowed similar vehicles registered in Wisconsin to be operated tax free upon its highways, under conditions as favorable to residents of Wisconsin as this state granted to non-residents.

In 1931 the legislature, by ch. 156, published June 1, 1931, created sub. (2) of sec. 85.05, Stats.; and by ch. 444, published July 7, 1931, amended that sub. (2) by designating the subsection created by ch. 156 as par. (a) of sub. (2), and also creating and adding par. (b) and (c) as part of sub. (2). That final enactment is as follows:

"Sec. 85.05 (2) (a) No motor vehicle, trailer or semi-trailer engaged in commercial transportation over regular routes or between fixed termini, or making more than one trip into Wisconsin during any year, whether for direct or indirect hire, and no motor vehicle, trailer or semi-trailer used regularly for the delivery or distribution of merchandise within this state or for interstate hauling, shall be operated on the public highways of Wisconsin, unless said motor vehicle shall have paid the full registration fee provided in section 85.01 of the Statutes, and shall display Wisconsin

number plates. The penalty applying to violations of section 85.01 shall apply to this subsection.

"(b) Provided, that notwithstanding the provisions of paragraph (a) of this subsection the secretary of state shall have authority to enter into reciprocal agreements with the responsible officers of other states, under which motor vehicles, trailers or semi-trailers owned by citizens of such states and engaged in commercial transportation may be operated in this state without a Wisconsin registration, provided like privileges are accorded to vehicles owned by Wisconsin citizens in such other states, but the secretary of state shall have no authority to enter into such reciprocal agreements covering motor vehicles, trailers or semi-trailers engaged in commercial transportation over regular routes or between fixed termini, or those operating for direct or indirect hire.

"(c) If any of the exemptions provided for in paragraph (b) of this subsection shall be held invalid and unconstitutional by any court of competent jurisdiction, the class or classes held to be invalidly exempted shall forthwith become subject to the provisions of paragraph (a) as if no exemption had been provided for. Such declaration of invalidity as to any of the foregoing exempted classes shall not affect the validity of any other provision of this subsection, and all such provisions are hereby declared to be severable."

On this appeal we are concerned with the scope, meaning, and effect of sec. 85.05 (2) (a), (b), and (c), Stats., considered as an entirety, after the ultimate enactment of its several subdivisions. Its purpose or intention, whether in relation to the classification of vehicles as ultimately made therein, or in relation to any other proposition, is not to be determined by any piecemeal consideration of its provisions; and there is no occasion for permitting such manner of consideration to complicate the problem. At best, it is rather difficult and unsatisfactory to anticipate the application of new statutory provisions, and then to undertake to construe them, when the subject matter thereof is a relatively new and developing business, as to which the essential facts and cir-

cumstances are not fully disclosed by allegation or proof because the controversy is presented merely upon issues of law, raised by demurrer to the meager allegations of fact in a complaint. "It is well-nigh impossible for the human mind to call up and contemplate in advance all the considerations which ought to be considered in passing upon the validity of the various incidental clauses of a new and complicated law. The concrete case and its actual circumstances and effects are apt to throw much light upon the question and suggest considerations wholly unthought of when viewing the matter abstractly in advance of any actual experience." *Borgnis v. Falk Co.* 147 Wis. 327, 364, 365, 133 N. W. 209.

The provisions of sec. 85.05 (2) (a), (b), and (c), Stats., construed as an entirety, in effect remove from the self-executing reciprocal exemption provision of sec. 85.05 (1), which was theretofore applicable to all foreign-owned motor vehicles, trailers, or semi-trailers—regardless of the type or size or purpose for which they were used,—two classes of such vehicles, when engaged in commercial transportation. The first class consists of those vehicles which are engaged regularly over regular routes, or between fixed termini, or make more than one trip during a year into Wisconsin for direct or indirect hire. As to all within that class there is to be no exemption whatsoever. That class was evidently intended to embrace such vehicles as are operated by those who are primarily engaged in the business of transporting persons or the property of others for compensation as private or common carriers. Virtually their entire business is based upon the use of the highways, which are usually their sole or, at least, principal place for conducting their business in this state. Their charges for this transportation service constitute the principal or even sole source of their income. The success and profits of their enterprises depend upon their frequent and intensive use of the highways, and

are directly related to the extent to which their vehicles occupy the highways, and to which they can increase in size and weight the loads they carry.

The second class consists of vehicles which are used regularly for interstate hauling, or the delivery or distribution of merchandise within Wisconsin, but which are not operated for direct or indirect hire. The exclusion of vehicles operated for hire from this second class evidently limits this class to vehicles operated by an owner in conducting some business in which he is engaged, but in connection with which, and as merely incidental thereto, it is necessary for him to haul between states, or to deliver or distribute in Wisconsin some of the articles or merchandise which he produces or handles in that business. Under such circumstances the highways are not the principal place for conducting the business of such an owner. On the contrary, for conducting his principal business he will usually have and maintain at some fixed location a private place of business with equipment and stock in trade in relation to all of which he will be subjected to the same public charges for taxes, etc., as other owners. Foreign registered vehicles, which are in that second class, are exempted by sec. 85.05 (2) (b), Stats., from the payment of registration fees to the same extent to which the foreign state, in which such vehicles are registered, accords to vehicles owned by Wisconsin citizens the like privilege to operate in such foreign state without registration, whenever a reciprocal agreement to that effect has been entered into between the secretary of state of Wisconsin and the responsible officer of such other state.

Plaintiffs' first contention is that the equality protection of the constitutions is violated because in par. (a) of sec. 85.05 (2) the legislature created a class, consisting of all foreign motor vehicles engaged in commercial transportation, as to which the full registration fee under sec. 85.05 (1) was required; and then after having thus established

a proper classification, the same legislature, in enacting par. (b) of sec. 85.05 (2), discriminated against a part of those in the class, which it had created in par. (a), by exempting part of that class from the taxation to which it declared in par. (a) that they should be subjected. The decision in *Wisconsin Asso. of Master Bakers v. Weigle,* 167 Wis. 569, 168 N. W. 383, is relied upon by plaintiffs. The statute involved in that case did place in one class all public bakeries, and expressly required the inspection and licensing of all of them. However, after providing for such inspection service for all, it exempted bakeries having less than twenty feet of baking surface in their oven or baking devices from the obligation of paying the license fee prescribed by the statute. It was alleged in the pleadings and assumed on the appeal that the license fee was not exacted for the purpose of revenue, but that its object was the reimbursement of the state for the licensing and the supervisory service rendered to all bakeries, under and pursuant to the law. Because the service was rendered to all, and then some were required to reimburse the state for that expense and others were exempted from paying for their share of that service, that statute was held void. This court said:

"Having in the exercise of the police power declared that all bakeries in the interest of the public health should be licensed and that a fee for such licensing should be exacted to cover in whole or in part the cost of licensing and supervision, upon what principle can it be said that a part of the licensed class can be wholly exempted? Such a provision clearly offends against the rule of equality. While it is within the province of the legislature within established rules to make classifications and subclassifications and to determine the amount of fees to be paid by each of the respective classes and subclasses, it is nevertheless beyond the power of the legislature to wholly exempt a part of the licensees and cast the whole burden upon the non-exempted subclasses. . . . Having said that in the interest of the public health bakeries operating less than twenty square feet of baking

surface do require licensing, inspection, and supervision, and having declared that the licensed class shall bear the expense of licensing and inspection, it cannot wholly exempt a part of the licensees and cast the whole burden upon the non-exempted subclasses. Such a provision is clearly arbitrary and discriminatory."

In the case at bar we are not concerned with any similar special supervisory inspection or service to be performed only as to all vehicles which are within the terms of par. (a) of sec. 85.05 (2), Stats. We are not concerned with a licensing fee exacted to cover the cost of any such special inspection or service. Consequently, it cannot be said that there is an exemption which relieves part of those benefited by a service and imposes on the remainder the entire expense. As there is no such unjust shifting of any burden there is no inequality or discrimination in any such respect. Neither must sec. 85.05 (2) (a) and (b), considered as an entirety, necessarily be construed as first creating one class and then exempting a portion of that class. As finally re-enacted, the entire section contemplates and provides for the two classes which are referred to above as the first and the second class, respectively. However, plaintiffs contend that there is no reason why the legislature should make any distinction between those two classes of foreign registered motor vehicles; and that in that respect the statute presents a glaring case of unlawful discrimination. The point would be well taken if the respective owners of the vehicles which are in either one or the other of the two classes were in all respects so similarly situated that there was no reasonable basis for the legislative selection and classification. That some differences do exist in the nature, purpose, and extent of the use of the vehicles in the respective classes, and in the conditions surrounding, and the modes of doing business of the respective owners, has been indicated above. Whether the resulting differences are such as to afford sufficient basis for legislative classification is primarily a matter of legislative dis-

cretion. As this court said in *State ex rel. Transportation Asso. v. Zimmerman*, 181 Wis. 552, 561, 196 N. W. 848:

"It is not necessary in a measure of this kind that it should be the most just or scientifically exact measure, nor is it necessary that each provision of the measure should be justified in whole or in part by economic or other reasons. The whole field is one of legislative discretion, and its boundaries, as before stated, are not exceeded unless a purpose to destroy or unreasonably interfere with a legitimate business is apparent." Page 561.

"It is not necessary for a court in passing upon the validity of such exemptions to resort to economic reasons. It is sufficient to say that as long as there is an equality between members of each class in a lawfully classified tax measure, neither the state nor the federal constitutions are invaded. There need not be equality between different classes unless the inequality is so great that it evinces a purpose to destroy or unreasonably hamper one class as against the other." Page 560.

That is in accord with what was recently again said in *State Board of Tax Comm'rs v. Jackson*, 283 U. S. 527, 51 Sup. Ct. 540, 75 Lawy. Ed. 1248:

"The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction. (Cases.) . . . 'A very wide discretion must be conceded to the legislative power of the state in the classification of trades, callings, businesses, or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.'

"It is not the function of this court in cases like the present to consider the propriety or justness of the tax, to seek for the motives or to criticise the public policy which prompted the adoption of the legislation. Our duty is to sustain the classification adopted by the legislature if there are substantial differences between the occupations separately

classified. Such differences need not be great. The past decisions of the court make this abundantly clear."

In that opinion the court quoted and applied what it had said in *Singer Sewing M. Co. v. Brickell,* 233 U. S. 304, 34 Sup. Ct. 493, 58 Lawy. Ed. 974:

"But there is an evident difference, in the mode of doing business, between the local tradesman and the itinerant dealer, and we are unable to say that the distinction made between them for purposes of taxation is arbitrarily made. In such matters the states necessarily enjoy a wide range of discretion, and it would require a clear case to justify the courts in striking down a law that is uniformly applicable to all persons pursuing a given occupation, on the ground that persons engaged in other occupations more or less like it ought to be similarly taxed."

So, in the case at bar, for reasons stated above, there exist such evident differences between the modes of doing business by owners operating for hire vehicles, which are within the first class, and owners operating in their own business, and not for hire, similar vehicles, which are within the second class, that judicial interference with the manner in which the legislature has exercised its discretion in arriving at such classification would be improper. The sufficiency, as basis for classification and resulting differences as to registration fees, of similar differences in the use of motor busses as compared to similar vehicles used for strictly private use was recognized in *State ex rel. Transportation Asso. v. Zimmerman, supra,* page 559, when this court said:

"Such busses are public carriers and compete with interurban and steam railways. They use the public highways of the state instead of privately-owned rights of way and tracks. The legislature no doubt considered, therefore, that in fairness to the public carriers with which they compete and in view of the wear they occasion the highways by their heavy loads and great speed, it was no more than fair to subject them to the specified tax."

Plaintiffs further contend that, in so far as the statute in par. (b) authorizes the secretary of state to enter into

reciprocal agreements with responsible officers of other states, it is invalid as an unlawful delegation of legislative power. It is urged that that officer may or may not enter into such agreements, and that the terms thereof are subject to the arbitrary action of the officers of either or both states. As was said in *Metropolis Theatre Co. v. Chicago,* 228 U. S. 61, 33 Sup. Ct. 441, 57 Lawy. Ed. 730:

"The problems of government are practical ones and may justify, if they do not require, rough accommodations— illogical, it may be, and unscientific. But even such criticism should not be hastily expressed. What is best is not always discernible; the wisdom of any choice may be disputed or condemned. Mere errors of government are not subject to our judicial review."

Whatever may have been the reason or administrative need for having the reciprocal feature of the statute become fully operative only upon state officers first entering into a reciprocal agreement, instead of having the statute self-executing upon the enactment of reciprocal legislation elsewhere, it does not necessarily follow that the authority conferred may lawfully be exercised arbitrarily or otherwise than in furtherance of the established general policy of reciprocity. The secretary of state is empowered to enter into such an agreement of reciprocity only when "like privileges are accorded to vehicles owned by Wisconsin citizens in such other states." That does not necessarily contemplate a bartering and trading between states by their authorized officers, which ultimately culminates in a contract, the terms and relative advantages of which may vary with the ability or inclinations of the negotiators. On the contrary, the statute may rightly be held to contemplate the ascertainment by the respective responsible officers of the existence and scope of reciprocal legislation, and of the conditions prescribed by the legislature to render the same effective; and that when the existence of such legislation and the scope thereof have been determined by such officers, then, in furtherance of the

legislative authorization, and within the limitations and standard prescribed thereby, the responsible officer shall conclude an arrangement or agreement which will officially evidence or certify to conformance with such legislative standard, and the resulting reciprocity for which the legislature provided. Thus construed, the authorization to the secretary of state by the legislature is well within its powers. *Wis. Tel. Co. v. Public Service Comm.* 206 Wis. 589, 240 N. W. 411, 413, and cases there cited. See, also, decisions by the supreme court of the United States, which are cited in *State ex rel. Bluemound Amusement Park, Inc. v. Mayor of Milwaukee,* 207 Wis. 199, 240 N. W. 847, as to the extent to which it has been held proper to go in upholding administrative power, even when vested in but a single individual, to determine who may be entitled to a license under very general provisions as to the licensee's qualifications, as prescribed in a licensing law.

Plaintiffs also charge that sec. 85.05 (2), Stats., is invalid because, although it relates to foreign-owned motor vehicles, it does not require the fees which are to be collected to be paid into any particular fund for the maintenance of highways or the regulation of traffic thereon. Plaintiffs rely upon the following statement in *Interstate Transit, Inc. v. Lindsey,* 283 U. S. 183, 51 Sup. Ct. 380, 75 Lawy. Ed. 953:

"As such a charge is a direct burden on interstate commerce, the tax cannot be sustained unless it appears affirmatively, in some way, that it is levied only as compensation for use of the highways or to defray the expense of regulating motor traffic."

However, immediately following that statement, the court added in that opinion:

"This may be indicated by the nature of the imposition, such as a mileage tax directly proportioned to the use (*Interstate Busses Corp. v. Blodgett,* 276 U. S. 245, 48 Sup. Ct.

230, 72 Lawy. Ed. 551), or by the express allocation of the proceeds of the tax to highway purposes, as in *Clark v. Poor*, 274 U. S. 554, 47 Sup. Ct. 702, 71 Lawy. Ed. 1199, or otherwise."

The Wisconsin statutes considered in their entirety fully meet the test thus imposed. As a matter of state bookkeeping the registration fees are first paid into the general fund. But parallel to this payment into the general fund is sec. 20.49, Stats., which appropriates "an amount equal to" the total registration fees to the highway commission for allocation as there prescribed. The provisions of sec. 20.49, Stats., as amended by ch. 22, Laws of 1931, fail to disclose any allocation which is not for a legitimate highway purpose. The net proceeds, after deducting collection and administrative expense, are readily traceable to such purpose. Plaintiffs call attention to the allocation for fire roads (sec. 20.49 (6), Stats.). Roads within the forest reserves are nevertheless public roads and an integral part of the state highway system. They may not be used ordinarily by interstate truckers, but neither are many town roads. The rule does not require an allocation to the particular road used by the trucker who is taxed. Another allocation is for purchasing timber land adjacent to highways (sec. 20.49 (7a), Stats.). This was apparently intended to preserve timber along some of the highways to add to the attractiveness of the highways from a scenic point of view, which is clearly an incidental highway use. The state's highway program and budget must be taken as a whole. All of the other allocations are also clearly for the development, maintenance, and regulation of the highways. As the net proceeds of the fees required by the statutes under consideration are in fact virtually all used for highway purposes, it follows that they constitute but compensation for the use of the highways. Consequently, the fees can be exacted of foreign-owned motor vehicles even though they are engaged

exclusively in interstate commerce. In *Clark v. Poor,* 274 U. S. 554, 557, 47 Sup. Ct. 702, 71 Lawy. Ed. 1199, the court said:

"The highways are public property. Users of them, although engaged exclusively in interstate commerce, are subject to regulation by the state to insure safety and convenience and the conservation of the highways. *Morris v. Duby,* 274 U. S. 135, 47 Sup. Ct. 548, 71 Lawy. Ed. 966. Users of them, although engaged exclusively in interstate commerce, may be required to contribute to their cost and upkeep. Common carriers for hire, who make the highways their place of business, may properly be charged an extra tax for such use. *Hendrick v. Maryland,* 235 U. S. 610, 59 Lawy. Ed. 385, 35 Sup. Ct. 140; *Kane v. New Jersey,* 242 U. S. 160, 61 Lawy. Ed. 222, 37 Sup. Ct. 30; *Hess v. Pawloski,* 274 U. S. 352, 71 Lawy. Ed. 1091, 47 Sup. Ct. 632. Compare *Packard v. Banton,* 264 U. S. 140, 144, 68 Lawy. Ed. 596, 607, 44 Sup. Ct. 257."

It is also contended that the statute is unenforceable because of the omission to define such terms as "motor vehicles," "commercial transportation," etc. Problems will undoubtedly arise as to the meaning and interpretation of some of the terms and provisions, and their application to various types of vehicles, under various circumstances. However, it is rather idle to anticipate the problems that may possibly arise, and to attempt their solution in advance. At this time it is sufficient that under the state of facts presented by the record herein, there does not appear to be any such uncertainty as to warrant the conclusion that it will be impossible to apply the statute because of any fatal indefiniteness in its terms or provisions. At all events, such questions as to the validity of the statute because of minor details can be given more critical and satisfactory consideration when they are presented because of the particular facts involved when an actual controversy arises in relation to them, instead of attempting to anticipate their solution upon

merely some hypothesis. *State ex rel. Buell v. Frear,* 146 Wis. 291, 307, 131 N. W. 832; *Borgnis v. Falk Co., supra,* p. 364; *Income Tax Cases,* 148 Wis. 456, 503, 517, 134 N. W. 673, 135 N. W. 164. Courts should not permit equity jurisdiction to be used in a suit of this sort to determine whether an act is fatally uncertain in some mere matter of detail. *Wadhams Oil Co. v. Tracy,* 141 Wis. 150, 160, 123 N. W. 785.

*By the Court.*—Orders affirmed.

FOWLER, J. I concur in the decision of this case but on grounds different from those upon which the decision is based. I agree with the court that sec. 85.05 (2), Stats., cannot be held unconstitutional because it does not expressly designate that the registration fees shall be devoted to highway purposes or because other statutes devote those fees to other than such purposes. The plaintiff truck owners might properly raise these objections because, if the statute were held unconstitutional as a whole, payment of the registration fee would be unlawfully exacted from them. But they are not in position to raise objections to par. (b) of the statute, for they are not affected by that provision if it be invalid, because, par. (a) being valid, they must pay the registration fee even if par. (b) is invalid. And it is a well recognized rule that one who is not affected by the unconstitutionality of a statutory provision cannot question its constitutionality. (See cases cited in vol. 2, Callaghan's Digest, p. 919, sec. 21.) There is therefore no occasion to consider the constitutionality of par. (b).

That par. (a) of the subsection stands as a valid enactment even if par. (b) is unconstitutional follows from consideration of the terms of par. (c) and the sequence of the enactments resulting in the subsection as it now stands. The legislature first enacted ch. 156, Laws of 1931, which created sub. (2) of sec. 85.05, Stats. It afterwards, by

ch. 444, Laws of 1931, amended sub. (2) by designating sub. (2) as it originally stood as par. (a) of sub. (2) and adding thereto par. (b), which it is contended is unconstitutional, and par. (c), which expressly provides that the provisions of par. (b) are severable and that if any part thereof shall be held unconstitutional the rest of the subsection shall nevertheless stand. The intent of the legislature is thus made manifest that par. (a) should stand even though par. (b) is invalid. This intent of the legislature must be effectuated and par. (a) upheld as subsisting legislation regardless of the invalidity of par. (b).

I do not agree with the court that par. (b) is constitutional. Its unconstitutionality appears to me so clear that I cannot pass by the opinion of the court on this phase of the case without stating briefly the reasons for my dissent from it.

(1) It seems to me there is no reasonable basis of classification in exempting trucks of non-residents from registration that are engaged in trucking the owner's own goods and requiring registration of those trucks of non-residents that are engaged in carrying goods for hire. This conclusion seems to me to follow from the mere statement of the proposition and to be supported by the consideration that under the interstate commerce clause of the constitution of the United States the only basis for exacting a registration fee of non-resident owners of automobiles is that such a fee may properly be exacted as compensation for use of the roads and to cover the cost of regulating traffic. That such is the basis for upholding imposition of such fees appears from the decisions of the supreme court of the United States cited in the opinion of the court herein. One class of trucks uses the roads of this state the same as the other and should be subjected to the same exactions as a condition of such use.

(2) Assuming that two states may without the consent of Congress enter into reciprocal agreements relative to re-

lieving their respective residents from registering their trucks in the other state and paying the registration fee therefor, I cannot avoid the conclusion that they cannot confer upon their secretary of state or other state officers the power to do so. It seems to me plain that if such agreements may be made they must be made by the legislatures by appointing committees or commissioners to negotiate and settle the terms of the agreements and then accepting and enacting into law the terms so agreed upon, or by some other direct action of the two legislatures settling the terms of the agreement. The opinion of the court attempts to meet this objection by simply saying, in effect, that an agreement is not an agreement and that the act does not mean what it says. This to my mind is going around the hurdle instead of jumping it.

(3) Assuming that an agreement is an agreement and that par. (b) means what it says, it would seem *a priori* that the paragraph is voided by art. I, sec. 10, par. 3 of the constitution of the United States, which provides that "No state shall, without the consent of Congress, . . . enter into any agreement or compact with another state." Considerable investigation inclines me to that opinion, but as the point was not raised in the brief of appellants I do not urge the objection positively.

A motion for a rehearing was denied, with $25 costs, on May 10, 1932.