OLSON and others, Appellants, vs. STATE CONSERVATION COMMISSION, Respondent.

*June 4—June 24, 1940.*

474

For the appellants there was a brief by *Evrard & Evrard* and *Evans & Merrill,* all of Green Bay, and oral argument by *R. E. Evrard.*

For the respondent there was a brief by the *Attorney General, Warren H. Resh,* assistant attorney general, *A. H. Smith,* counsel for the Conservation Commission, attorneys, and *Wm. J. P. Aberg* of Madison of counsel, and oral argument by *Mr. Smith, Mr. Aberg,* and *Mr. Resh.*

NELSON, J. The complaint is long and somewhat repetitious. So many of its allegations as are necessary to an understanding of the questions presented may be summarized as follows: The plaintiffs are commercial fishermen. Commercial fishing throughout the history of this state has been a very important industry. For many years the plaintiffs have been engaged in fishing in the waters of southern Green Bay, northern Green Bay, and Lake Michigan. The legislature has recognized that different localities require different fishing regulations, and has divided the waters of this state into inland waters and outlying waters. Commercial fishing is confined principally to the outlying waters as defined in sec. 29.01 (4), Stats. 1939. The legislature, in the past, has enacted laws relating to the taking of fish from the outlying waters. The legislature, in the past, has also designated closed seasons for different species of fish. For a number of years the plaintiffs and other commercial fishermen have been licensed annually under laws with which the plaintiffs have fully complied. In 1937 the legislature enacted ch. 366, Laws of 1937, and attempted thereby to delegate to the commission the power to regulate fishing in the outlying waters of this state. Subsequent to the enactment of that chapter the commission undertook to regulate commercial fishing in the outlying waters of this state, and in purported pursuance of said chapter promulgated certain orders which changed certain provisions of ch. 29, Stats. 1935, theretofore enacted by the legislature, and changed the types of nets used by the plaintiffs, the gear or mesh thereof, and the seasons for commercial fishing, as a result of which practically all of the provisions of ch. 29, Stats., as theretofore enacted by the legislature, were changed. The complaint further alleges that late in the year 1937, the commission adopted order No. F-307, which was approved by the governor in January, 1938; that said order purported to regulate the types of nets, the gear or mesh thereof, which in large part was to become

effective on November 21, 1939; that thereafter the plaintiffs, and other commercial fishermen, attempted to comply with said order by reslugging their old nets and by purchasing new nets at great expense to them; that in the fall of 1939, the defendant adopted order No. F-405, which was approved by the governor on October 21, 1939, and which was published on November 2 or 3, 1939; that said order was published only in certain newspapers, some of which were not in general circulation in the district where the plaintiffs conducted their industry; that said order No. F-405 repealed order No. F-307 and made new regulations which were to become effective on November 21, 1939, regarding the sizes of the mesh of certain nets used by the plaintiffs and others in fishing in and upon outlying waters; that ch. 366, Laws of 1937, is unconstitutional and many of the provisions of order No. F-405 are unreasonable and unjust; that the plaintiffs, and others similarly situated, are threatened with prosecutions for violations of the provisions of said order No. F-405, and that the plaintiffs and others are subjected to the risk of having their properties unlawfully confiscated to their irreparable injury and damage.

It appears from the complaint that the plaintiffs attempted to state two different causes of action,—one grounded upon the assertion that ch. 366, Laws of 1937, is unconstitutional and the other grounded upon the assertion that order No. F-405 is unlawful, or unjust and unreasonable. Sec. 29.174 (8) (a), Stats. 1939. The commission interposed only a general demurrer to the complaint. It did not demur on the ground that several causes of action were improperly united in the complaint. Under a general demurrer it is the duty of the court to determine whether upon facts alleged in the complaint the plaintiff is entitled to any measure of judicial redress, either equitable or legal. Sec. 263.07, Stats. 1939. By not demurring to the complaint on the ground that several causes of action were improperly united in it, the com-

mission waived that objection. Sec. 263.12, Stats. 1939. In *Wisconsin Hydro Electric Co. v. Public Service Comm.* 234 Wis. 627, 291 N. W. 784, it was considered that the constitutionality of sec. 196.49 (4) (c) could not be raised in that statutory action in which the issue was confined to the "lawfulness and reasonableness" of the order of the public service commission. In that action, however, one of the grounds of demurrer was that several causes of action had been improperly united in the complaint.

Courts unquestionably have the power to enjoin state officials from enforcing statutes which contravene the constitution. *John F. Jelke Co. v. Beck,* 208 Wis. 650, 661, 242 N. W. 576.

The plaintiffs first contend that since ch. 366, Laws of 1937, delegates legislative power to the commission which is to be exercised in limited localities, *i. e.,* in the outlying waters as defined by law, it offends against sec. 18, art. IV, of our constitution, which provides:

"No private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title."

Ch. 366, Laws of 1937, repealed subs. (10) and (11) of sec. 29.174 and sec. 29.085 of the statutes. It then provided:

"Section 2. A new section is added to the statutes to read: 29.085 The conservation commission is hereby authorized to regulate hunting and fishing on and in all interstate boundary waters, and outlying waters specified in subsection (4) of section 29.01. Any act of the conservation commission in so regulating the hunting and fishing on and in such interstate boundary waters and outlying waters shall be valid, all other provisions of the statutes notwithstanding, provided such powers shall be exercised pursuant to and in accordance with section 29.174 and subsection (7) of section 23.09."

At the time ch. 366, Laws of 1937, was enacted, sec. 29.174, Stats., therein referred to, in part, provided:

"(1) There shall be established and maintained, as hereinafter provided, such open and close seasons for the several species of fish and game, and such bag limits, size limits, rest days and conditions governing the taking of fish and game *as will conserve the fish and game supply and insure to the citizens of this state continued opportunities for good fishing, hunting and trapping.*

"(2) It shall be the duty of the conservation commission and it shall have power and authority to establish open and close seasons, bag limits, size limits, rest days and other conditions governing the taking of fish or game, in accordance with the public policy declared in subsection (1). Such authority may be exercised either with reference to the state as a whole, or for any specified county or part of a county, or for any lake or stream or part thereof."

Sec. 23.09 (7), Stats. 1937, also referred to, in part, provided:

"(7) *Commission rules, studies, surveys, services, penalties, powers.* The commission is hereby authorized to make such rules and regulations, inaugurate such studies, investigations and surveys, and establish such services as they may deem necessary to carry out the provisions and purposes of this act, and any violation of any provisions of this act, or of any rules or regulation promulgated by the commission, shall constitute a misdemeanor and be punished as hereinafter provided."

Sec. 29.085, Stats. 1935, repealed by ch. 366, Laws of 1937, provided:

"29.085 *Commission to regulate hunting and fishing in interstate waters.* The conservation commission is hereby authorized to regulate hunting and fishing on and in all interstate boundary waters, except the outlying waters specified in subsection (4) of section 29.01, and excepting boundary waters between the states of Wisconsin and Iowa, and St. Louis river, St. Louis bay, Superior bay, and Allouez bay, in conjunction with the proper authorities of adjoining states, for the purpose of effecting a similarity of laws pertaining to the fish and game of such waters. Any act of the

conservation commission in so regulating the hunting and fishing on and in such interstate boundary waters shall be valid, all other provisions of the statutes notwithstanding."

It is clear that the legislature, in enacting ch. 366, Laws of 1937, intended to delegate additional powers to the commission respecting the regulation of hunting and fishing on and in interstate boundary and outlying waters.

In enacting ch. 366, Laws of 1937, Did the legislature enact a local law? It obviously intended to grant to the commission the power to act in the fields of interstate boundary and outlying waters as defined in sub. (4) of sec. 29.01, Stats. That section provides:

"All waters within the jurisdiction of the state are classified as follows: Lakes Superior and Michigan, Green bay, Sturgeon bay, Sawyer's harbor, and the Fox river from its mouth up to the dam at De Pere are 'outlying waters.' All other waters, including the bays, bayous and sloughs of the Mississippi river bottoms, are 'inland waters.'"

In our opinion, ch. 366, Laws of 1937, is not a local law. In *Monka v. State Conservation Comm.* 202 Wis. 39, 231 N. W. 273, ch. 278, Laws of 1925, which regulated commercial fishing in the waters of Lake Michigan, was assailed on the ground that it applied only to Lake Michigan and therefore was a local law within the meaning of sec. 18, art. IV, Const. It was held that that chapter was not a local law, because the state as trustee had an interest in its wild animals and fish, the conservation of which is a matter of state-wide concern to all of the people of the state, as distinguished from a mere local concern or interest; that since all the restrictions in the law there assailed were imposed wholly in furtherance of the preservation of such public interest, and for the benefit of all of the people, it was not subject to successful attack because the subject thereof was not more accurately expressed in the title, and that when the state itself is interested as a proprietor, or as a trustee,

or in its governmental capacity, for the benefit of, or in the interest of the general public, a law relating to such interest is not a local bill or law. In our opinion, the plaintiffs' first contention is without merit.

The plaintiffs next contend that ch. 366, Laws of 1937, is unconstitutional because it delegates legislative power to the commission. Numerous cases are cited by the plaintiffs in support of that contention. *Panama Refining Co. v. Ryan,* 293 U. S. 388, 55 Sup. Ct. 241, 79 L. Ed. 446; *A. L. A. Schechter Poultry Corp. v. United States,* 295 U. S. 495, 55 Sup. Ct. 837, 79 L. Ed. 1570; *State ex rel. Wis. Inspection Bureau v. Whitman,* 196 Wis. 472, 220 N. W. 929; *Wisconsin Telephone Co. v. Public Service Comm.* 206 Wis. 589, 240 N. W. 411; *Gibson Auto Co. v. Finnegan,* 217 Wis. 401, 259 N. W. 420; *Modern S. Dentists v. State Board of D. Examiners,* 216 Wis. 190, 256 N. W. 922; and *State ex rel. Zimmerman v. Dammann,* 229 Wis. 570, 283 N. W. 52. Ever since *State ex rel. Wis. Inspection Bureau v. Whitman, supra,* was decided, it has been consistently held that (p. 505) "the power to declare whether or not there shall be a law; to determine the general purpose or policy to be achieved by the law; to fix the limits within which the law shall operate,—is a power which is vested by our constitution in the legislature and may not be delegated. When, however, the legislature has laid down these fundamentals of a law, it may delegate to administrative agencies the authority to exercise such legislative power as is necessary to carry into effect the general legislative purpose." The legislature, of course, may not delegate legislative power to an administrative board without standard or guide.

In *State v. Sorenson,* 218 Wis. 295, 260 N. W. 662, ch. 242, Laws of 1933, was assailed on the ground that it unconstitutionally delegated legislative power. It was held that that chapter did not unlawfully delegate legislative power to the commission, that it did no more than authorize the

commission to fill in the details. The chapter there considered was much more subject to attack than is ch. 366, Laws of 1937. Ch. 366 authorized the commission to regulate hunting and fishing on and in all boundary waters and all outlying waters, and specifically provided that any act of the Conservation Commission in so regulating hunting and fishing on and in such waters should be valid notwithstanding other provisions of the statutes, *provided such powers be exercised pursuant to and in accordance with sec. 29.174 and sec. 23.09 (7), Stats.* Sec. 29.174 (1) declares the public policy of this state with respect to fish and game and provides the standard, *i. e.,* "there shall be established and maintained . . . such open and close seasons for the several species of fish and game . . . *as will conserve the fish and game supply and insure to the citizens of this state continued opportunities for good fishing, hunting and trapping.*" Sub. (2) of that section empowered and authorized the commission to establish open and close seasons, bag limits, size limits, rest days, and other conditions governing the taking of fish or game in accordance with the public policy declared in sub. (1). It is clear that the power delegated to the commission by ch. 366, Laws of 1937, authorized the commission to act in such a way *"as will conserve the fish and game supply."* It thus appears that the legislature declared that there should be a law, and determined the general policy sought to be achieved, and that regulations or orders of the commission expressing such public policy and promulgated by it, should have the force and effect of law. Ch. 366, in our opinion, contains a sufficient standard "as will conserve the fish and game" and therefore may not be assailed on the ground that it unconstitutionally delegates legislative power. Compare the following cases, in which sufficient standards were found in the several laws to permit this court to uphold them as proper delegations of legislative power: *Kreutzer v. Westfahl,* 187 Wis. 463, 204 N. W. 595; *State ex rel. Hickey v. Levitan,* 190 Wis. 646, 210 N. W.

111; *Interstate Trucking Co. v. Dammann,* 208 Wis. 116, 241 N. W. 625; *State v. Wetzel,* 208 Wis. 603, 243 N. W. 768; *Rust v. State Board of Dental Examiners,* 216 Wis. 127, 256 N. W. 919; *State v. Sorenson, supra; Petition of State ex rel. Attorney General (Tavern Code Authority),* 220 Wis. 25, 264 N. W. 633; *State ex rel. Finnegan v. Lincoln Dairy Co.* 221 Wis. 1, 265 N. W. 197, 265 N. W. 851; *State ex rel. Attorney General v. Wisconsin Constructors,* 222 Wis. 279, 268 N. W. 238; *Clam River Electric Co. v. Public Service Comm.* 225 Wis. 198, 274 N. W. 140.

The plaintiffs next contend that order No. F-405 is class legislation and denies to the citizens of this state the equal protection of the law. Obviously, the provisions of order No. F-405 apply equally to all commercial fishermen in this state. It cannot be asserted that the legislature may not treat commercial fishermen in the boundary or outlying waters of this state as a distinct class and subject them to such regulation as it deems appropriate. In *Bittenhaus v. Johnston,* 92 Wis. 588, 66 N. W. 805, it was held that ch. 221, Laws of 1895, which regulated the method and times of catching fish in the waters of this state was not, in the absence of any constitutional provision against it, invalid as class legislation because it made different regulations for different waters, or contained certain provisions applicable to certain localities or waters only or exempted certain waters from all such regulations, or discriminated between different localities and waters and did not deny to any person "the equal protection of the laws" within the meaning of the Fourteenth amendment to the constitution of the United States.

The plaintiffs next contend that since they were already duly licensed as commercial fishermen for the year July 1, 1939, to June 30, 1940, the commission was without power or authority to change the terms or provisions of the order (F-307) which was in force and effect at the time the licenses were issued to them. It is particularly contended that chang-

ing the sizes of the meshes of certain nets and making such changes effective prior to the expiration dates of the plaintiffs' licenses amounted to a taking of their property without due process of law. It is asserted that the plaintiffs will sustain great losses if they are compelled to discard their nets which conform to the regulations of order No. F-307, but do not conform to, and cannot be made to conform to the requirements of order No. F-405. That order No. F-405 will require the abandonment of much equipment heretofore lawfully used by the plaintiffs and result in large losses to them, there can be no doubt. But it does not follow that the law is invalid or unconstitutional because it will so result. One of the underlying purposes of the order assailed is to conserve the fish supply in the outlying waters of this state. Under order No. F-405, the size of the mesh of certain nets employed in commercial fishing is enlarged. One of the purposes of the order is to conserve such fish as are too small to be caught in the meshes of the nets which commercial fishermen may now use.

It is almost universally held that licenses are not contracts; create no vested or permanent rights; do not prevent legislatures from imposing new or additional burdens or licenses, or from altering or revoking licenses; notwithstanding the expenditure of moneys by licensees in reliance on the licenses issued and regardless of whether the terms for which licenses were issued have expired. 17 R. C. L. p. 476; 37 C. J. p. 168, and cases cited in the respective footnotes. In *McMillan v. City of Knoxville,* 139 Tenn. 319, 329, 202 S. W. 65, it was said:

"The licensee was bound to know that the license or permit was held subject to the modification or repeal of the law under which it was issued, from the making of which change, if the public welfare required it, no incidental inconvenience he would suffer could stay the hand of the state."

In *Tuttle v. Wood* (Tex. Civ. App.), 35 S. W. (2d) 1061 1063, it was held that the power of the legislature to change laws regulating fishing is not lost because those affected have been licensed to operate under prior laws. It was there said:

"It must be conceded that the state has the inherent power, to be exercised through the legislature, to regulate the taking of fish and shrimp from its public waters, and to prohibit from time to time such taking, in order to conserve those natural resources for the ultimate benefit of all the people. So long as that power is reasonably exercised by the legislative authority, no other branch of the government may interfere therewith. Ordinarily, the necessity or reasonableness of regulation or prohibition in specific cases, for the time being, are left to the discretion of the legislature, whose determination thereof, in the exercise of a sound discretion, is conclusive upon the courts. The power to originate such legislation carries with it the further power to change existing laws, including regulation and prohibition, to meet changing conditions, and this power is not lost simply because those affected have been licensed to operate under and by virtue of the conditions of prior laws. They were charged with notice that under the grant of power the legislature could further legislate upon the subject."

It has also been held in analogous cases involving occupational taxes levied for revenue purposes, that legislatures are not precluded from increasing the amount of occupational taxes during the very years for which permits or licenses had been granted in pursuance of prior laws. *Alaska Consol. Canneries v. Territory of Alaska* (9th Cir.), 16 Fed. (2d) 256; *Alaska Consol. Canneries v. Territory of Alaska* (9th Cir.), 29 Fed. (2d) 401; *Western Union Tel. Co. v. Harris* (Tenn. Ch.), 52 S. W. 748.

It is further contended that ch. 366, Laws of 1937, is unconstitutional because it impairs the obligation of the license contract of each of the plaintiffs. Since a license is not a contract between the licensee and the licensing authority, constitutional provisions prohibiting the impairing of the

obligation of contracts are not applicable. It is generally held that a statute which imposes additional burdens on persons who have been licensed does not violate such constitutional provisions. 16 C. J. S. p. 719, § 287; *Semler v. Oregon State Board of Dental Examiners,* 294 U. S. 608, 55 Sup. Ct. 570, 79 L. Ed. 1086, which affirmed the supreme court of Oregon, 148 Or. 50, 34 Pac. (2d) 311; *Donahue v. Rosenthal,* 147 Or. 408, 34 Pac. (2d) 316; *Alaska Consol. Canneries v. Territory of Alaska* (9th Cir.), 16 Fed. (2d) 256; *Heslep v. State Highway Dept. of South Carolina,* 171 S. C. 186, 171 S. E. 913; *Goe v. Gifford,* 168 Va. 497, 191 S. E. 783; and that a license authorizing a person to carry on a particular business is not protected from impairment by the contract clause of the constitution. 16 C. J. S. p. 720, § 287.

Whatever additional burdens were put upon the plaintiffs as licensed commercial fishermen by requiring them to fish only with such nets as were authorized by order No. F-405, they are without redress since they were bound to know that the licenses issued to them were subject to such new laws as might be enacted (in this case orders of the commission), which might change the specifications of the equipment which they could use as commercial fishermen, if the welfare of the public required such changes. We conclude that order No. F-405, is not subject to attack on the ground that it impairs the obligations of a contract.

Is order No. F-405 unlawful, unjust, and unreasonable? Sec. 29.174 (8) (a), Stats., authorizes any person who is dissatisfied with any order of the commission affecting the county in which such person resides to commence an action against the commission, in the circuit court of any county affected by such order, or if the order sought to be reviewed is a state-wide order, then in the circuit court for Dane county, to vacate and set aside any such order on the ground that it is unlawful and unjust and unreasonable. The plaintiffs list about twenty provisions of order No. F-405, which

they assert are unjust and unreasonable. We have carefully examined the allegations of the complaint so charging. Barring the burdens and hardships which the order imposes upon commercial fishermen, hereinbefore discussed in connection with the constitutional issues, we find nothing in the order which shows that it is unreasonable and unjust, except possibly paragraph 20 thereof which provides:

"*Penalty.* Any violation of any of the provisions of section 29.33 shall be punished by a fine of not less than seventy-five dollars nor more than five hundred dollars or by imprisonment in the county jail for not less than three months nor more than nine months, or by both such fine and imprisonment."

Sec. 29.174 (12), Stats., provides:

"Nothing in this section shall be construed to confer upon the conservation commission the power to alter any provisions of the statutes relating to forfeitures, penalties, license fees or bounties."

It is contended that since the commission changed the prior law with respect to commercial fishing it indirectly changed the penalties. We do not regard that contention as sound. Since the commission is not authorized to alter any of the provisions of the statutes relating to penalties, no change in penalties· was effected, even if the commission· so intended. There is no allegation in the complaint that the plaintiffs have been prosecuted, or have been subjected to any penalties. If they should be prosecuted in the future they cannot be subjected to penalties other than those provided by the legislature. . We consider that it would serve no useful purpose to discuss the numerous criticisms of order No. F-405. As before stated, the obvious purpose of the order is to conserve the supply of fish in the outlying waters of this state. There is nothing in the order which condemns it as unreasonable or unjust, or which goes beyond what the commission, in the exercise of the administrative powers conferred upon it, may

have deemed wise and necessary to conserve the supply of fish in those waters. In *Tuttle v. Wood, supra,* it was said:

"Ordinarily the necessity or reasonableness of regulation, or prohibition in specific cases, for the time being, are left to the discretion of the legislature, whose determination thereof, in the exercise of a sound discretion, is conclusive upon the courts."

Had the legislature itself enacted the order, its justness and reasonableness probably would not have been attacked. Since ch. 366, Laws of 1937, was a valid enactment, order No. F-405, promulgated in pursuance thereof, was, in our opinion, also valid.

*By the Court.*—Order affirmed.