COMMITTEE ON ASSEMBLY ORGANIZATION Legislature
You have requested my opinion regarding the section of Assembly Bill 432 relating to the authority of the Department of Natural Resources (DNR) to classify and protect various plant and animal species whose existence is threatened or endangered. Since Assembly Bill 432 has recently been enacted into law by ch. 370, Laws of 1977, I will refer to the pertinent provisions of ch. 370 in the discussion below.
The first question is:
 What constitutes an endangered or threatened species of fish?
The answer is found in sec. 11 of ch. 370, Laws of 1977, repealing and recreating sec. 29.415 (2), Stats.:
(2) DEFINITIONS. For purposes of this section:
 (a) "Endangered species" means any species whose continued existence as a viable component of this state's wild fauna or flora is determined by the Department to be in jeopardy on the basis of scientific evidence. *Page 10 
 (b) "Threatened species" means any species of wild fauna or flora which appears likely, within the foreseeable future, on the basis of scientific evidence to become endangered.
 (c) "Wild animal" means any mammal, fish, wild bird, amphibian, reptile, mollusk, crustacean, or arthropod, or any part, products, egg or offspring thereof, or the dead body or parts thereof.
 (d) "Wild plant" means any undomesticated species of the plant kingdom occurring in a natural ecosystem.
Since the chapter not only protects Wisconsin species, but also incorporates the federal threatened and endangered species lists, sec. 6, ch. 370, amending sec. 29.415 (3), Stats., one must refer to the federal definitions as well. Presumably, the federal lists referred to in ch. 370 are those established under the federal endangered species act of 1973, Pub.L. 93-205, and the Lacey Act, 16 U.S.C.A. sec. 701, et seq. Section 3 (4) of Pub.L.93-205 defines "endangered species" as "any species which is in danger of extinction throughout all or a significant portion of its range," and sec. 3 (15) defines "threatened species" as "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." The language of the federal and state definitions, though not identical, is sufficiently similar as to yield a harmonious result when the federal lists are incorporated into the state lists. Concrete determinations of species falling within the definitional limits of the state statute will, of course, be made in the Department's fact-finding process.
The second question is:
 Under this bill, would it be possible that the Department of Natural Resources could expand its authority and designate chubs, perch or any other species which the commercial fishermen depend upon for their livelihood as endangered and have that said livelihood cut off?
In answering this question, it is first important to note that the DNR has had a long-standing duty to regulate fishing in state waters, including commercial fishing, secs. 23.09, 29.085, and 29.174, Stats. The Department has also been required to protect all fish and wildlife species whose continued existence is endangered, sec. 29.415, Stats. *Page 11 
(1975). Section 29.415 (3), Stats., as amended by sec. 6, ch. 370, Laws of 1977, requires the Department to protect species threatened with extinction as well. Once a species has been designated as either threatened or endangered, sec. 29.415 (4), Stats., as amended by sec. 6, ch. 370, Laws of 1977, prohibits the taking, transporting, possessing, processing, or selling of that species. No exception is made for species which commercial fishermen may depend upon for their livelihood. Therefore, unless commercial permit fishing were allowed under sec. 29.415 (6)(a), Stats., as amended by sec. 7, ch. 370, Laws of 1977, an unlikely event, commercial fishermen would be prohibited from taking any listed species. (See answer to question 4 below.) If the facts so warranted, the Department would be empowered to include chubs or perch on the prohibited list.
It has been firmly established that the state may constitutionally limit commercial fishing to protect any species whose continued existence is in jeopardy. Since the title to all wild animals is in the state in trust for the public, the state has the undoubted right in the exercise of its police power to protect and preserve such animals in the public interest. As a trustee the state may conserve and regulate or prohibit the taking of wild animals in any reasonable way it may deem necessary for the public welfare. State v. Herwig,17 Wis.2d 442, 446, 117 N.W.2d 335 (1962); Krenz v. Nichols, 197 Wis. 394,400, 222 N.W. 300 (1928); State v. Nergaard, 124 Wis. 414, 420,102 N.W. 899 (1905). If a species is facing extinction, perhaps the only reasonable measure is to prohibit its taking altogether, at least until such time as the threat to its continued survival has passed.
Furthermore, in my opinion, the Legislature could reasonably determine that such species preservation measures must begin before the species has become so depleted that only a few members remain. Indeed, if the DNR has been exercising its full authority under secs. 23.09, 29.085 and 29.174, Stats. (1975), to close commercial fishing seasons and to generally regulate the taking of particular species in the interests of conservation, then there will be few additions to the threatened and endangered species list, absent unforeseen predation, disease or loss of suitable habitat. Therefore, the new law may have only minimal effect on the interests of commercial fishermen. Nevertheless, it should be noted that a commercial fishing license is a privilege, not an absolute right, and the license holder agrees to exercise this privilege in accordance with all pertinent state laws and regulations. *Page 12 Le Clair v. Swift, 76 F. Supp. 729 (E.D. Wis. 1948). Moreover, the Legislature may constitutionally impose new burdens on existing licenses, or revoke them altogether. Olson v. StateConservation Comm., 235 Wis. 473, 484, 293 N.W. 262 (1940). Therefore, if a certain species such as the chub were determined to be endangered or threatened, existing licenses could be nullified insofar as they permitted taking of chub, and no new licenses to take chub would be issued.
Recent decisions of the United States Supreme Court confirm that no one has the right to hunt or fish a species out of existence. In a series of cases entitled Puyallup Tribe v. Dept.of Game, the Court declared that even those Indians whose commercial fishing rights are protected by federal treaty are subject to state regulations necessary for species conservation or preservation. Puyallup III, 433 U.S. 165 (1977); Puyallup II,414 U.S. 44 (1973); Puyallup I, 391 U.S. 392 (1967). Accord,State v. Gurnoe, 53 Wis.2d 390, 192 N.W.2d 892 (1972).
In any event, the revised delegation of power to the Department under the new law is accompanied by sufficient safeguards to protect the individual from arbitrary action on its part and to ensure that it acts within the legislative purpose. In sec. 29.415 (3), Stats., as amended by sec. 6, ch. 370, Laws of 1977, the Legislature provides statutory standards to guide the agency in promulgating or amending its list of species requiring protection. The Department must base its decision-making on the best scientific and commercial data available to it. It must solicit comments, consult with other state game directors, federal agencies and other interested persons and organizations and comply with the rule-making procedures in ch. 227, Stats., in promulgating its list. A public hearing is expressly required before the list may be revised or amended, sec. 29.415 (3) (b), (c), Stats., as amended by sec. 6, ch. 370, Laws of 1977.
Thus, commercial interests may be advanced and should be considered at any time the DNR promulgates a new list or periodically revises an old one. Moreover, if at any time commercial fishermen possess evidence that a listed species is no longer threatened or endangered, any three of them together may petition the Department to review its status. After holding a public hearing, the Department may by rule remove such species from the list, sec. 29.415 (3)(c), Stats., as amended by sec. 6, ch. 370, Laws of 1977. *Page 13 
In short, as part of its scheme to ensure that DNR action conforms to the legislative purpose, the Legislature has provided the mechanism by which commercial fishermen, among others, may participate in the process by which the status of any species is determined.
The legislative scheme does, however, present potential constitutional difficulties in requiring incorporation of the federal list of endangered and threatened species into the state list, sec. 29.415 (3)(a), Stats., as amended by sec. 6, ch. 370, Laws of 1977:
 (3) (title) Endangered and threatened species list. (a) The Department shall by rule establish an endangered and threatened species list. The list shall consist of 3 parts: wild animals and wild plants on the U.S. list of endangered and threatened foreign species; wild animals and wild plants on the U.S. list of endangered and threatened native species; and a list of endangered and threatened Wisconsin species.
If read to require incorporation of the federal list by mere reference in the state list, this section may not provide adequate notice to those affected by it.
Under secs. 227.01 (1) and (9) and sec. 227.023, Stats., the DNR is required to file a copy of every rule it adopts with the Revisor of Statutes. Pursuant to sec. 227.025, Stats., the text of every rule so filed must be published in full. The agency may, with the consent of the Revisor and Attorney General, incorporate standards established by organizations of recognized national standing by reference "only in rules that are of limited public interest." Notice of a prohibition on the hunting, fishing or taking of endangered or threatened plant or animal species is without doubt of wide public interest. If consent were given to limited notice in the present situation, the practical effect would be to ensure that the new legislation could not achieve its intended purpose, viz., to eliminate further reduction in the numbers of particular species.
The statute further requires that the incorporated standards be "readily available in published form" before the Revisor and Attorney General may consent to publication of rules in abbreviated form. Such requirement is consistent with the mandate of Wis. Const. art. VII, sec. 21, which has been viewed as requiring full text publication of all general laws and administrative rules having the effect of law. 63 Op. Att'y Gen. 347 (1974). The reason for the requirement of *Page 14 
publication is to ensure that persons affected by new laws have notice of their existence before such laws go into effect.O'Connor v. City of Fond du Lac, 109 Wis. 253, 261, 85 N.W. 327
(1901). Where professional engineers are subject to standards established by technical societies and as a matter of practice have easy reference to these standards in technical publications, permitting incorporation of these standards into Wisconsin law by mere reference or citation is consistent with the requirements of full and fair notice. Where, however, the typical lay citizen is required to search the Federal Register to determine which species he or she may lawfully hunt, fish or otherwise take, full and fair notice of requirements under Wisconsin law is probably not given. The Federal Register is likely to be found in only a few counties in the state, and thus constitutes too remote a source to require the typical resident to consult. The citizen should have to look no farther than the state's administrative code, wherein agency rules are set forth. Any potential difficulties regarding adequacy of notice can be avoided simply by reading the new law as requiring that the DNR rule incorporating the federal rule set out in detail the specific provisions of the federal rule. Fortunately, such a construction of the law is the one most compatible with the language used by the legislative drafter.
A potentially more difficult problem is raised by the question whether changes in the federal rules after the date of enactment of the state law are to be automatically included in the state rules. If the law is read to require automatic adoption or incorporation not only of existing federal rules, but also of future amendments, this section might be held by a court to be invalid under the aforementioned Wis. Const. art. VII, sec. 21, requiring full publication of agency rules. My predecessor in office has specifically ruled that it is improper under this constitutional provision to incorporate by reference or citation federal statutes or regulations, and that any attempt to incorporate prospective standards or amendments would be invalid. 59 Op. Att'y Gen. 31 (1970). Such an attempt may also contravene Wis. Const. art IV, sec. I, which vests legislative power only in the Wisconsin Legislature and its proper delegates and makes invalid any attempt to delegate that authority to another governmental entity without due process safeguards. Seegenerally, Wagner v. Milwaukee, 177 Wis. 410, 188 N.W. 487
(1922); 16 Am. Jur. 2d, Constitutional Law sec. 245, p. 495; 82 C.J.S. Statutes sec. 391, p. 936; 63 Op. Att'y Gen. 229 (1974); 50 Op. Att'y Gen. 107 (1961). *Page 15 
The obvious purpose of the new legislation is to create a state species conservation program consistent with the purposes and policies of the federal program. Under sec. 6, Pub.L. 93-205, any state establishing an adequate and active program for the conservation of endangered and threatened species is eligible for federal assistance, including funding, to implement its program. Presumably, ch. 370, Laws of 1977, is intended to establish this eligibility. Nevertheless, notwithstanding this admirable goal, the Wisconsin Legislature could not, in 1978, constitutionally require the DNR to adopt any list promulgated by the Secretary of Interior under the federal endangered species act in, say, 1980. To do so would abrogate its duty to act as the sole legislative body for the people of the State of Wisconsin. See generally,State ex rel. Warren v. Nusbaum, 59 Wis.2d 391, 440,208 N.W.2d 780, 809 (1973); Clintonville Transfer Line v. P.S.C.,248 Wis. 229, 230-231, 21 N.W.2d 5, 11 (1945). See also 50 Op. Att'y Gen. 107, 113 (1961), which states the general rule that while a state legislature does not invalidly delegate its legislative authority by adopting an existing law or rule of Congress, the adoption of prospective federal laws or rules does constitute an unconstitutional delegation of legislative power, Wis. Const. art IV, sec. I; art. VII, sec. 21. The Wisconsin Constitution prohibits any delegation that would result in an abdication of legislative authority to an agency which is not accountable to the people of this state.
The Wisconsin Supreme Court has recently ruled that the Department must modify permits issued under the Wisconsin Pollution Discharge Elimination System (WPDES) program to conform to final rules adopted by the federal Environmental Protection Agency (EPA) and the DNR subsequent to issuance of the permits.Niagara Of Wisconsin Paper Corporation v. Wisconsin Department ofNatural Resources, 84 Wis.2d 32, 268 N.W.2d 153 (1978). In my opinion, this ruling does not contradict the general prohibition against automatic adoption of prospective federal rules by a state body. The issue before the court was not whether EPA rules were to be automatically incorporated into state law, but whether previously issued WPDES permits must be modified to reflect new regulations adopted by both the EPA and the DNR. The court carefully noted that EPA rules do not automatically become administrative law in Wisconsin, that the DNR still makes the rules and that, therefore, the process ensures both full publication of the rules and the safeguard of public scrutiny at the state level, 84 Wis.2d at 52. Both of these elements *Page 16 
may be missing in any attempt to read the new endangered species law as requiring automatic incorporation of future amendments to federal rules into our state rules.
The constitutionality of this provision can be preserved by concluding that it is limited to requiring the DNR to adopt those federal lists in effect at the time the state law is enacted. Such a construction accords with the general rule that, in the absence of legislative direction to the contrary, when a statute adopts by reference only limited and particular provisions of another statute, the reference does not include subsequent amendments. Only when a statute adopts the general law on a given subject is the reference construed to mean the law as it reads thereafter at any given time, including amendments subsequent to the time of adoption. Union Cemetery v. City of Milwaukee,13 Wis.2d 64, 108 N.W.2d 180 (1961); George Williams College v.Village of Williams Bay, 242 Wis. 311, 7 N.W.2d 891 (1943); 2A Sands' Sutherland Statutory Construction, sec. 51.08 (4th Ed. 1972). Since the reference here is to a limited and particular provision of federal law, and since the Legislature has expressed no intent to incorporate subsequent amendments, in my opinion such amendments in the federal rules will have no automatic effect on the state rule. Any subsequent changes in the federal lists would provide only guidance under the new statute for the promulgation by DNR of revised lists of endangered or threatened species. In short, the federal rule is made merely a standard by which to measure DNR adopted rules.
There are several constitutional methods by which the Legislature can assure similarity between DNR and federal lists to fulfill its goal to create a species conservation program in harmony with the federal program. One is the present method of legislative review of DNR rules under sec. 227.018, Stats. The Legislature could simply respond to each rule-making process under the new statute and insist on similarity to current lists promulgated under the federal endangered species act. The Legislature could require the DNR to regularly review federal changes to ascertain whether they accord with Wisconsin legislative policies. Another approach is for the Wisconsin Legislature itself to enact or amend species conservation lists as statutes in response to federal activities. In these ways, the Legislature could avoid requiring adoption by this state of unknown rules. *Page 17 
The third question is:
Would this bill permit contract or permit fishing?
Chapter 370, Laws of 1977, provides no express authority for either contract or permit fishing for removal of endangered or threatened species from state waters for commercial purposes. The DNR could authorize it only if the legislative purposes were thereby served, which, in my opinion, is unlikely to occur in the foreseeable future. The very designation of a species as endangered or threatened means that it needs protection from commercial interests, among others, to assure its continued survival for the aesthetic, recreational and scientific benefit of present and future generations.
The fourth question is:
 Could this result in denying commercial fishermen the right to harvest currently allowable fish by mandate of the Department?
The answer is yes, assuming that the listing of the species is supported by sufficient scientific and other evidence. Furthermore, it is my opinion that any commercial fishing licenses issued before the promulgation of the endangered or threatened species list are subject to the restrictions contained in the list. See sec. Il above; Le Clair v. Swift, 76 F. Supp. 729
(E.D. Wis. 1948); Olson v. State Conservation Comm.,235 Wis. 473, 293 N.W. 262 (1940).
BCL:NLA