Leon **RUBIN** et al.

v.

The **DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT** et al.

No. 71–2763.

United States District Court,
E. D. Pennsylvania.

Sept. 7, 1972.

Peter A. Galante, Philadelphia, Pa., for plaintiffs.

Walter S. Batty, Jr., Philadelphia, Pa., for defendants.

## OPINION

JOHN MORGAN DAVIS, District Judge.

Presently before this Court are Defendants' Motions to Dismiss the above captioned action on the grounds (1) that we lack jurisdiction over the subject matter, Rule 12(b)(1) Fed.Civ. and (2) that Plaintiffs have failed to state a claim upon which relief can be granted, Rule 12(b)(6) Fed.Civ.

Plaintiffs are the co-owners of a specialty printing business known as "Fairmount Printing House" which is located at 1502–06 West Thompson Street, Philadelphia, Pa. In accordance with a Declaration of Taking filed in the Court of Common Pleas of Philadelphia County, docketed as of the September Term, 1970, No. 3891, the Philadelphia Redevelopment Authority (hereinafter RDA) condemned the Plaintiffs' property as part of the North Philadelphia Redevelopment Area, Model Cities Neighborhood Development Area II, Philadelphia. The Department of Housing and Urban Development (hereinafter HUD) financially assists the RDA. According to Plaintiffs the RDA, after a staff review of Plaintiffs' expert appraisal, offered $240,000 for their property and machinery, but subsequently rescinded the offer although not until after it had been accepted by the Plaintiffs. On March 31, 1970, the RDA then offered Plaintiffs $32,680 for the real estate including that machinery and equipment which the RDA contended formed part of the real estate. Plaintiffs refused the offer and the case was heard by a Board of View on November 11, 1971 for a determination of damages.

Plaintiffs seek a permanent injunction enjoining HUD and RDA from committing any money or engaging in any further activity with regard to the Model Cities Neighborhood Development Area

until the RDA and HUD comply with the provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4601 et seq. (1971) (hereinafter ACT).

In their original Complaint, the Plaintiffs allege that HUD's grant, loan, or other funding of the RDA is unlawful because the RDA has failed to comply with the following sections of the ACT:

(1) Section 301(3), 42 U.S.C. § 4651(3); the RDA has not provided Plaintiffs with a written statement of and summary of the basis for the amount it established as just compensation; and

(2) Section 302, 42 U.S.C. § 4652; the RDA has not offered Plaintiffs a sum for its real estate, improvements, and machinery and equipment permanently installed in its premises.

In their Amended Complaint, Plaintiffs added to the list of sections of the ACT with which they allege the RDA has failed to comply:

(1) Section 205, 42 U.S.C. § 4625; the RDA has not offered the Plaintiffs relocation assistance.

(2) Section 213, 42 U.S.C. § 4633; the RDA has refused to review or provide a forum for review of Plaintiffs' grievances as to the payment for his property.

(3) Section 301(4), 42 U.S.C. § 4651(4); the RDA has required Plaintiffs to valuate their premises without first offering to pay them the value set at its own approved appraisal.

(4) Section 301(7), 42 U.S.C. § 4651(7); the RDA has refused to offer Plaintiffs the amount of its approved appraisal, has attempted to dispossess Plaintiffs and coerce them into accepting an amount below its own accepted and approved appraisal.

Plaintiffs have alleged violation of sections appearing under both Subchapter II and Subchapter III of the ACT. The provisions of Subchapter II govern relocation assistance to be rendered to persons displaced as a result of Federal-ly assisted programs. The provisions of Subchapter III govern real property acquisition to implement the Federally assisted programs. We shall first consider the Motions to Dismiss with respect to the Subchapter III allegations, specifically § 301(3), § 301(4), § 301(7) and § 302.

■ Pursuant to § 305, 42 U.S.C. § 4655, the requirements of Subchapter III of the ACT are applicable only to real property acquired after January 2, 1971, which is the effective date of the ACT. Section 305 provides, to wit:

Notwithstanding any other law, the head of a Federal agency shall not approve any program or project or any grant to, or contract or agreement with a State agency under which Federal financial assistance will be available to pay all or part of the cost of any program or project which will result in the acquisition of real property on and after January 2, 1971, unless he receives satisfactory assurances from such State agency that—

(1) in acquiring real property it will be guided, to the greatest extent practicable under State law, by the land acquisition policies in section 4651 of this title and the provisions of section 4652 of this title, and

(2) property owners will be paid or reimbursed for necessary expenses as specified in sections 4653 and 4654 of this title.

The cut off date expressed in Section 305 is reiterated in § 4215(b) of the new Regulations (Part 42, Subtitle A, Title 24 CFR: 36 F.R. 8786–87, May 13, 1971) which requires that Subchapter III be followed "in the acquisition of real property on or after the effective date of the act." Under Pennsylvania law, the filing of a Declaration of Taking effects the acquisition of the property by the condemnor, 26 P.S § 1–402(a) (1971 Supp.). Plaintiffs themselves note in Paragraph 5 of their Complaint that the RDA filed a Declaration with respect to their property as of the September Term, 1970. As the acquisition

in this case occurred before the date provided in § 305, January 2, 1971, Plaintiffs cannot state a claim based upon any section contained in Subchapter III of the ACT.

■ Plaintiffs attempt to counter the obvious and clear meaning of § 305 by turning to § 211(c) contained in Subchapter II. Section 211(c) provides that any contract for funding made between a state agency and HUD before January 2, 1971, the effective sale of the ACT, may be amended to include the cost of providing payments and services under § 305 of the ACT. Had the property been acquired after January 2, 1971, then the program under which the acquisition was accomplished could be amended to provide the funds necessary for the implementation of § 305 even though the grants and agreements were signed before that date. The case at Bar, however, does not involve such a situation. Clearly, § 211(c) is not intended to bring all properties whenever acquired under the aegis of the ACT in direct conflict with § 305.

■ Beyond the barrier to this action presented by the § 305 of the ACT, another and more fundamental reason exists for granting the Defendants' Motion. The ACT does not create rights in favor of property owners enforceable in this Court; the purpose of the ACT is merely to set policy guidelines to be followed in the acquisition of real property. Section 102 expresses the purpose of the ACT as we have interpreted it:

(a) The provisions of section 4651 of this title create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation.

(b) Nothing in this chapter shall be construed as creating in any condemnation proceedings brought under the power of eminent domain, any element of value or of damage not in existence immediately prior to January 2, 1971.

That this expression reflects the intention of Congress can be confirmed by referring to the Legislative History of §

102 as reported in House Report No. 91–1656:

"[T]he provisions of the uniform policy on land acquisition practices, in section 301, do not create any rights or liabilities in any person and do not affect the validity of any acquisition by purchase or condemnation.

"The committee has considered, but does not agree with, proposals which would make the benefits provided by the bill subject to judicial review. The committee agrees with the judgment of the Department of Justice, and others, who believe that this would add an unnecessary burden to the overcrowded courts. The primary purpose of the judicial review proposals is to give recognition to the principle that such benefits should be viewed as administrative payments to displaced persons. The committee believes that this objective can be achieved by the clear language of the bill which makes relocation payments and assistance, and the availability of suitable replacement housing for displaced persons, matters of congressional policy and makes agency heads responsible for faithful execution. Section 213(b)(3) of the bill provides an alternate to judicial review, by requiring the heads of Federal agencies to establish regulations and procedures that will assure any person aggrieved by a determination as to eligibility for a payment authorized by this act, or the amount of the payment, may have his application reviewed by the head of the Federal agency having authority over the project; or in the case of a program receiving Federal financial assistance, by the head of the State agency." U. S. Congressional Code and Admin. News, 91st Cong.2nd Sess.1970, pp. 5854 and 5855.

■ Having disposed of the Subchapter III allegations of Plaintiffs' Complaint and Amended Complaint, we now turn to the Subchapter II allegations, addressing ourselves first to Plaintiffs' allegations with regard to § 213 of the

ACT, that a review procedure has not been set up nor have their grievances been entertained. Section 213 of the ACT does not set up review procedures but rather authorizes the establishment of such procedures. We take judicial note that the regulations promulgated pursuant to the mandate of § 213 do establish the requisite review procedures. Plaintiffs have failed in their Amended Complaint to allege that they have endeavored to utilize these review procedures and have been frustrated. Beyond this fact, however, again we note that the effective date of the ACT is January 2, 1971, and not being retroactive, can only govern acquisitions or displacements occurring after that date. Since the Plaintiffs are challenging an aspect of acquisition and since the acquisition of the property was accomplished in September, 1970 and before January 2, 1971, the effective date of the ACT, Plaintiffs are not entitled to the benefit of the review procedures which the regulations set up in accordance with the mandate of the ACT.

■ We finally turn to Plaintiffs' allegation that they requested relocation assistance pursuant to § 205 of the ACT but were denied such assistance. Following the provisions of Rule 12(b) Fed.Civ.P. we shall consider Defendants' Motion to Dismiss as a Motion for Summary Judgment pursuant to Rule 56 Fed.R.Civ.P. because matters outside the pleadings have been submitted to this Court for our consideration.

Defendants have submitted to us a certified copy of a deposition of Plaintiff Leon Rubin taken on November 8, 1971 as part of the condemnation proceeding in the State Court. On direct examination, Rubin testified that he did not intend to relocate but rather had decided to close down his business. The reasons he ascribed for his decision were the inability to move his equipment without damaging it and the loss of business because of the time lag between the termination of operations at one location and opening up at a new location. On cross examination the following occurred between David S. Winston, Esquire, representing the RDA and Mr. Rubin:

Q. You have not sought out any new location for your plant, and it is your intention to go out of business as a result of this condemnation?
A. Yes.

It is clear to this Court from the statements made by Rubin that increased compensation for their property and not relocation is Plaintiffs' concern. Since they have no intention of moving, they obviously cannot be in need of relocation assistance. As no genuine issue of fact appears, Summary Judgment is appropriate and Defendants' Motion will be granted.

Plaintiffs argue that the Motion to Dismiss of the RDA is untimely, dilatory, and filed solely for the purpose of delay. This statement is unsupported and without foundation because the defense of "Failure to State a Claim" was raised as the first defense in the RDA's Answer to the Complaint; the Motion to Dismiss only reiterated that defense.

We shall grant the Motions to Dismiss for Failure to State a Cause of Action brought by the several Defendants in this action. By doing so we are not leaving the Plaintiffs without a remedy; they may still proceed, as they have been doing, in the State Courts under the Eminent Domain Laws of Pennsylvania. We can only conclude by saying that the ACT involved in this action was not designed to usurp the state courts, the function for which the Plaintiffs have attempted to use it. They must wait like so many others for the state court processes to afford them relief.