CHARLES M. HILL, SR., Secretary, Department of Local Affairs andDevelopment
You have requested my opinion on six questions which relate to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, P.L. 91-646, 84 Stat. 1894 (hereinafter referred to as the Federal Act), certain rules promulgated thereunder by the United States Department of Health, Education and Welfare, and secs. 32.19 through 32.27, Stats.
In your first question you ask:
 "If differences exist regarding the relocation payment to be made to the relocatee under Wisconsin law (Secs. 32.19 through 32.27, Wis. Stats.) and under federal law (The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, P.L. 91-646, 84 Stat. 1894 and the regulations thereunder), which law is controlling?"
The Federal Act does not preempt the field of relocation assistance legislation nor does it create substantive rights enforceable in federal courts by displaced persons, except when a federal agency is the condemnor. Its purpose is to provide a uniform policy or guidelines for the fair and equitable treatment of persons displaced as a result of federally assisted programs. Where the requirements of the Wisconsin law and the federal law and rules differ, a state governmental agency is bound by the law of this state. Section 201, P.L. 91-646, 84 Stat. 1894; Rubin v.Department of Housing and *Page 230 Urban Development (1972), 347 F. Supp. 555; Wil-Tex PlasticsMfg., Inc. v. Department of H. U. Dev. (1972), 346 F. Supp. 654;Martinez v. Department of Housing Urban Develop. (1972),347 F. Supp. 903.
Although the Federal Act does not preempt the field, the intent and directive to take maximum advantage of federal payments or assistance has been made quite clear by the Wisconsin legislature. Section 32.19 (1), Stats., declares that it is in the public interest to fairly compensate persons for losses which they sustain as the result of public projects, and sec. 32.27 (2) (b), Stats., provides in part:
 ". . . It is intended that the payments and services described by ss. 32.19 to 32.27 are required for any project which is not subject to federal regulation under P.L. 91-646; 84 Stat. 1894. Any condemnor exercising the power of eminent domain under this chapter for a project subject to such federal regulation shall be required to make payments and provide services described in ss. 32.19 to 32.27 only to the extent required to receive federal payment or assistance. The intent of this paragraph is to assure that condemnors take maximum advantage of federal payment or assistance for relocation. . . ." (Emphasis added.)
That portion of sec. 32.27, Stats., which has been emphasized above should be considered with respect to Art. IV, sec. 1, Wis. Const., which states:
 "The legislative power shall be vested in a senate and assembly."
The question to be initially determined is whether or not the legislature has attempted an unlawful delegation of the legislative power to the federal government by its reference to federal regulation.
The subject of legislation by reference has been dealt with in 50 OAG 107 (1961). Therein, it was pointed out that most state statutes, which have adopted federal statutes with the administrative rulings to be made under them, have been declared unconstitutional for delegating legislative power to an administrative board. This follows the general rule that while a state legislature does not invalidly delegate its legislative authority by adopting a law or rule of *Page 231 
Congress if such law or rule is already in existence or operative, it is generally held that the adoption of prospective federal legislation or federal administrative rules constitutes an unconstitutional delegation of legislative power.
Article VII, sec. 21, Wis. Const., provides:
 "The legislature shall provide by law for the speedy publication of all statute laws . . . made within the state, as may be deemed expedient, and no general law shall be in force until published."
This has been construed to mean that the state legislature cannot constitutionally adopt prospective federal legislation by reference. This includes both federal rules and regulations made thereunder. See 10 OAG 648 (1921).
Even though the Federal Act is expressly mentioned in sec.32.27 (2) (b), Stats., specific provisions are not set out in detail. No attempt was made, either expressly or impliedly, to incorporate federal administrative rules promulgated thereunder, if there were in fact any federal rules in existence when sec.32.27 (2) (b), Stats., was enacted on January 2, 1971. I am also unaware of the Federal Act ever having been published in this state under appropriate legislative authority.
I am of the opinion that there has been no attempt to incorporate federal administrative rules by reference to the Federal Act in sec. 32.27 (2) (b), Stats. I am also of the opinion that any attempt to incorporate the Federal Act by reference into ch. 32, Stats., would be invalid and not in compliance with Art. VII, sec. 21, Wis. Const. The payments and services described by secs. 32.19 to 32.27, Stats., should be made and performed in all cases where state public projects displace persons or families in this state, for state public projects are not governed or regulated by the Federal Act.
It is quite clear that a condemnor must provide satisfactory assurances that it can and will comply with the federal agency guidelines to assure federal participation in state projects. Sec. 210, P.L. 91-646, 84 Stat. 1894. However, state administrative agencies have only those powers which have been expressly granted to them or reasonably implied from the nature of their particular duties and any powers which an agency seeks to exercise must be found within the *Page 232 
state statute under which the agency proceeds. American Brass Co.v. State Board of Health (1944), 245 Wis. 440, 448, 15 N.W.2d 27.
Therefore, based upon the foregoing, the federal rules in question are solely informational insofar as state governmental agencies are concerned. They establish the guidelines which must be followed by states if federal payments or assistance are desired. Rubin v. Department of Housing and Urban Development,supra. Nevertheless, federal participation may be maximized and payments may be made to displaced persons by state agencies only as provided for and in accordance with secs. 32.19 to 32.27, Stats., the Federal Act and rules notwithstanding.
Your second question is as follows:
 "Must a relocatee residing with a completely unrelated person be considered as a `person', as that term is defined in Sec. 32.19 (2) (a) 4 Wis. Stats., and as an `individual' as that term is used in Sec. 32.19 (4) (b), Wis. Stats. or are they to be considered a family under Sec. 15.4 (h), Federal Register, Volume 38, Number 62, Page 8493?"
Section 32.19 (2) (a) 3 and 4, Stats., defines "person" as:
"An individual who is the head of a family; or
"An individual not a member of a family."
Although the term "family" was previously defined by sec. 32.19
(2) (a) Stats., as two or more individuals living together in the same dwelling unit who are related to each other by blood, marriage, adoption, or legal guardianship, that particular subsection was repealed in ch. 103, Laws of 1971. Consequently, we no longer have the benefit of an express definition of the term "family" even though the word still appears in the Wisconsin Relocation Assistance law.
Although concerned with the application of a zoning ordinance, our Supreme Court has held that a legislative body may include or exclude the requirement of a relationship by blood or marriage in defining the word "family." In the absence of such a definitional requirement, it cannot be said that the legislature intended to restrict the use of the word family to members of a group related within degrees of sanguinity or affinity. In noting that the term "family" *Page 233 
does not necessarily imply the ties of a legal relationship by blood or marriage, the court stated:
 ". . . but now its accepted definition is a collective body of persons living together in one house, under the same management and head subsisting in common, and directing their attention to a common object, the promotion of their mutual interests and social happiness. . . ." (Missionaries of La Salette v. Whitefish Bay (1954), 267 Wis. 609, 615, 66 N.W.2d 627)
The legislative action of repealing the former definition of "family," the ordinary usage of the term as noted by the court, as well as the fact that sec. 32.19 (2) (a) 3, Stats., interalia, acknowledges "the head of a family," leads me to conclude that a blood or other legal relationship is not necessary for there to be a "family" as the term applies to secs. 32.19 to32.27, Stats.
Under sec. 32.19, Stats., as it is presently written, two or more unrelated individuals living together for the sake of convenience in a common apartment without a common head of the household must each be considered as a "person" for relocation assistance purposes, and as such, are individually entitled to payments under sec. 32.19 (4) (b) 1, Stats.
Whether unrelated persons residing with one another in fact constitute a "family" or are "persons" or "individuals" is an administrative determination to be made by the condemnor based upon the facts and circumstances in each particular case.
Your third question asks:
 "Is such a person or individual entitled to an `in lieu of' moving expense payment and a dislocation allowance (Sec. 32.19 (3) (b) 1, Wis. Stats.), and a replacement housing payment, not to exceed $4,000 (Sec. 32.19 (4) (b) 1)."
Under sec. 32.19 (3) (b) 1, Stats., a displaced person may elect to accept a moving expense allowance "in lieu of" actual moving expenses and, in addition thereto, a dislocation allowance of $200.
Section 32.19 (4) (b), Stats., provides: *Page 234 
 "Tenants and certain others. In addition to amounts otherwise authorized by this chapter, the condemnor shall make a payment to any individual or family displaced from any dwelling not eligible to receive a payment under par. (a) . . ." (Emphasis added.)
Therefore, in answer to your third question, a displaced person is entitled to an "in lieu of" moving expense payment, a dislocation allowance, and a replacement housing payment in accordance with the above-cited sections of the statutes.
Your fourth question is as follows:
 "If the answer to 3 above is `yes,' or if any replacement housing payment is to be made to such person under Sec. 32.19 (4) (b) 1, then is such payment to be made for a comparable dwelling, as defined in Sec. 32.19
(2) (f), Wis. Stats., or for a dwelling which, as set forth in Sec. 32.19 (4) (b) 1, Wis. Stats., is decent, safe and sanitary and adequate to accommodate such individual in an area not generally less desirable in regard to public utilities, public and commercial facilities and places of employment? (This question arises, for example, when a person sharing an apartment relocates into an unshared apartment.)"
Whereas the term "comparable dwelling" appears in sec. 32.19 (4) (a) 1, Stats., which provides for a payment to an owner of real property acquired for a public project, it does not appear in sec. 32.19 (4) (b) 1, Stats., the subsection which provides for a payment to tenants and certain others. It is noted that the latter payment shall be an amount which is necessary to enable the displaced person to rent or acquire:
 ". . . a decent, safe and sanitary dwelling . . . adequate to accommodate such individual or family in an area not generally less desirable in regard to public utilities, public and commercial facilities and places of employment, . . ." (Sec. 32.19 (4) (b) 1, Stats.)
If subsec. (4) (b) 1 included the term "comparable dwelling," there would be no question but that the replacement housing payment made thereunder would have to be computed in a manner consistent with the payment made to landowners under subsec. (4) (a) 1, Stats., but it does not. *Page 235 
Where a statute is plain and unambiguous, interpretation is not necessary. The intent of the legislature must be gathered from the terms of the law. State ex rel. Badtke v. School Board
(1957), 1 Wis.2d 208, 83 N.W.2d 724. The language of sec. 32.19
(4) (b) 1, Stats., is clear and unambiguous. The payment made pursuant to sec. 32.19 (4) (b) 1, Stats., is not to be based upon a "comparable dwelling" standard, but must be for a decent, safe and sanitary dwelling adequate to accommodate the displaced person or family in an area not generally less desirable in regard to public utilities, public and commercial facilities, and places of employment, as determined jointly by your Department and the Department of Industry, Labor and Human Relations.
In question five you ask:
 "Can rental assistance payments be based upon amounts which exceed the actual costs incurred by a person in obtaining replacement housing or does the language `amount which is necessary' in Sec. 32.19 (4) (b) 1, Wis. Stats. taken with the language `will be based on the rental agreed to by the displaced person' under Sec. 15.39 (c), Federal Register, Volume 38, Number 62, Page 8497, dictate paying no more than actual costs?"
Keeping in mind that the legislature did not include the term "comparable dwelling" in the provisions of sec. 32.19 (4) (b) 1, Stats., and the effect of that omission as herein discussed, the language "amount which is necessary" is controlling.
The state law in this instance is consistent with the administrative rules of the United States Department of Health, Education and Welfare, which limits payments to the rent agreed to by a displaced person.
I am of the opinion that the rental assistance payments to be paid to an individual or family under the provisions of sec.32.19 (4) (b) 1, should not exceed the actual costs incurred by a person obtaining replacement housing.
Your last question is as follows:
 "Does the language `a payment' and `such payment' in Sec. 32.19 (4) (b) require a lump-sum payment, or allow for four *Page 236 
yearly installments? Is the language in Sec. 15.39 (f) of Federal Register, Volume 38, Number 62, Page 8497, which calls for semiannual installment payments permissive or mandatory?"
Section 32.19 (4) (b) refers to "a payment" and "such payment," and is silent with respect to any type of installment payments. Words in statutes are to be given their commonly understood meanings, unless inconsistent with the manifest legislative intent. Greenbaum v. Department of Taxation (1957), 1 Wis.2d 234,83 N.W.2d 682.
The manner in which relocation assistance payments are to be made must be determined in accordance with the language found in secs. 32.19 to 32.27, Stats. I am of the opinion that the payments referred to in sec. 32.19 (4) (b), Stats., must be in the form of a lump sum or single payment. Again, state agencies are not bound by the Federal Act or the federal administrative rules promulgated thereunder. Rubin v. Department of Housing andUrban Development, supra. At most, an agency's inability to comply with the federal rules will disqualify a particular project or projects from federal participation.
I would note, however, that the particular portion of the federal rule which you have cited does not appear to be inflexible in that it may be modified upon request to reflect the wishes of the displaced person. Whether or not the language found in sec. 15.39 (f), Federal Register, Vol. 38, No. 62, at p. 8497, is permissive or mandatory insofar as eligibility for federal participation is concerned is a question which can only be initially answered by the administering federal agency. If it is deemed to be mandatory, sec. 32.19 (4) (b), Stats., would have to be amended to permit installment payments.
RWW:MP